129 Nev., Advance Opinion LK,
 IN THE SUPREME COURT OF THE STATE OF NEVADA

 GIOVANNI 0. RUGAMAS, No. 62251
 Petitioner,
 vs.
 THE EIGHTH JUDICIAL DISTRICT
 COURT OF THE STATE OF NEVADA,
 IN AND FOR THE COUNTY OF
 CLARK; AND THE HONORABLE ABBI
 F! LE D
 SILVER, DISTRICT JUDGE,
 Respondents,
 and
 THE STATE OF NEVADA,
 Real Party in Interest.

 Original petition for a writ of mandamus or prohibition
 challenging a district court order denying a pretrial petition for a writ of
 habeas corpus based on alleged deficiencies in the grand jury proceedings.
 Petition granted.

 Philip J. Kohn, Public Defender, and Jennifer L. Schwartz, Deputy Public
 Defender, Clark County,
 for Petitioner.

 Catherine Cortez Masto, Attorney General, Carson City; Steven B.
 Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District
 Attorney, Clark County,
 for Real Party in Interest.

 BEFORE GIBBONS, DOUGLAS and SAITTA, JJ.

SUPREME COURT
 OF
 NEVADA

(0) 1947A
 ,A3-/.9Y71
 OPINION

 By the Court, SAITTA, J.:
 The State sought an indictment against petitioner Giovanni 0.
 Rugamas on charges of sexual assault and lewdness involving a child who
 was under 10 years of age. During the grand jury proceedings, the State
 presented testimony about out-of-court statements made by the child-
 victim describing the alleged sexual conduct. With some exceptions, an
 out-of-court statement offered to prove the truth of the matter asserted is
 "hearsay." NRS 51.035. Under Nevada law, a grand jury cannot receive
 hearsay. NRS 172.135(2).
 In this original writ proceeding, we consider whether the
 child-victim's out-of-court statements were properly received by the grand
 jury on either of two grounds: as non-hearsay because they were
 inconsistent with the victim's grand jury testimony or as admissible
 hearsay under NRS 51.385, which provides that statements about any act
 of sexual conduct made by a child who was less than 10 years old are
 admissible "in a criminal proceeding" if a court finds sufficient guarantees
 of trustworthiness. We conclude that the statements were not properly
 before the grand jury. Because the victim was not subject to cross-
 examination concerning the out-of-court statements, those statements
 were not excluded from the definition of hearsay under NRS 51.035(2)(a).
 Although hearsay that falls within a statutory exception set forth in NRS
 Chapter 51 may be considered by a grand jury, Gordon v. Eighth Judicial
 Dist. Court, 112 Nev. 216, 223, 913 P.2d 240, 245 (1996), we conclude that
 the exception in NRS 51.385 for trustworthy statements by a child-victim
 of sexual assault does not apply to grand jury proceedings. Because the
 statements were hearsay and did not fall within an exception that makes
SUPREME COURT
 OF
 NEVADA

 2
(0) 1947A • • ,
hearsay admissible, the grand jury could not consider the statements.
Absent the hearsay evidence, there was not sufficient legal evidence to
support a finding of probable cause and the indictment cannot stand. We
therefore grant the petition.
 FACTS AND PROCEDURAL HISTORY
 Rugamas is awaiting trial on an indictment charging him with
one count of sexual assault of a minor under the age of 14 years and one
count of lewdness with a child under the age of 14 years. See NRS
200.366(3)(c); NRS 201.230(1). At the grand jury hearing, the State
presented the testimony of four witnesses: the alleged victim (A.C.), her
sister (Y.V.), her mother (Elsa), and a forensic interviewer with the
Southern Nevada Children's Assessment Center (Faiza Ebrahim).
 The State presented evidence that Rugamas sometimes took
care of the victim and her sisters, and that on one such occasion, he locked
himself and the victim in a bedroom and touched her vaginal area both
over and under her clothing. Unfortunately, A.C., who was six years old
at the time of the hearing, was unable to recall significant details of the
alleged sexual conduct other than Rugamas locking her in a bedroom
while she and her sisters were in his care. She also did not remember
telling the other witnesses that Rugamas sexually abused her.
 Y.V. witnessed part of the incident but not any sexual conduct.
She testified that she saw Rugamas put a blanket over A.C.'s head, take
her to a bedroom, and shut the door and that she heard A.C. crying and
unsuccessfully tried to open the locked bedroom door. Although Y.V.
looked under the bedroom door, she could not see into the room. In
addition to her observations, Y.V. testified to a statement made by the
victim. Y.V. testified that sometime after the bedroom incident, A.C. told
her that Rugamas had touched her and she pointed to her "private."

 3
 Elsa did not witness any of the conduct. She testified to
 statements that Y.V. and A.C. made to her. During a discussion with her
 daughters about inappropriate touching, Y.V. told her that Rugamas put
 A.C. in a room with him and Y.V. heard A.C. cry, but Y.V. could not access
 the room. When Elsa asked A.C. where Rugamas touched her, A.C. held
 up two fingers and pointed toward her vaginal area.
 Ebrahim testified about her interview with A.C. and
 statements that A.C. made during the interview. A.C. told Ebrahim that
 Rugamas spanked her bottom with a belt and touched her vaginal area
 with his hand under her clothing and that "it hurt." When asked where it
 hurt, A.C. indicated that it hurt inside her "private." A.C. told Ebrahim
 that Rugamas also touched her vaginal area on top of her clothes. A.C.
 told Ebrahim that the incident occurred in a bedroom, she cried, and
 Rugamas told her not to tell anyone. At the conclusion of the testimony,
 the grand jury returned a true bill.
 Rugamas filed a pretrial petition for a writ of habeas corpus
 challenging the grand jury proceedings on several grounds, including that
 the indictment was based on hearsay in violation of Nevada law. The
 State responded, asserting that the subject evidence was admissible under
 NRS 51.385. Rugamas countered, arguing that NRS 51.385 does not
 apply to grand jury proceedings because the statute conditions
 admissibility of the evidence upon a court making a determination that
 the evidence contains guarantees of trustworthiness. The district court
 denied the petition after a hearing. In its written order, the district court
 concluded that the victim's statements were not hearsay because they
 were prior inconsistent statements, and if they were hearsay, they were

SUPREME COURT
 OF
 NEVADA

(0) 1947A
 4
 admissible under NRS 51.385. This original petition for extraordinary
 relief followed.
 DISCUSSION
 Rugamas argues that the district court manifestly abused its
 discretion by denying his pretrial habeas petition because the grand jury
 was presented with nothing but inadmissible hearsay evidence and
 therefore the indictment was deficient. In particular, he argues that the
 testimony of Y.V., Elsa, and Ebrahim could not be admitted under NRS
 51.385 until a court conducted a hearing and determined the
 trustworthiness of A.C.'s statements, and, because that was not done here,
 the challenged evidence remained inadmissible at the grand jury hearing.
 As to the district court's conclusion that the evidence was admissible as
 prior inconsistent statements, Rugamas argues that the district court's
 decision was wrong because he had no opportunity to cross-examine A.C.
 as required by NRS 51.035(2)(a). 1
 Availability of writ relief
 Rugamas seeks a writ of prohibition or mandamus. A writ of
 prohibition may issue to arrest the proceedings of a district court
 exercising its judicial functions, when such proceedings are in excess of
 the jurisdiction of the district court. NRS 34.320. Because the district
 court had jurisdiction to consider Rugamas' pretrial petition for a writ of

 1 Rugamas also argues that the grand jury proceedings were
 deficient because the prosecutor failed to notify him of the time and date of
 the grand jury hearing as required by NRS 172.241 and did not present
 exculpatory evidence at the hearing as required by NRS 172.145(2).
 Because we grant Rugamas' petition on another basis, we need not
 consider those challenges.

SUPREME COURT
 OF
 NEVADA

 5
(0) 1947A .gr4

 7771
 habeas corpus by virtue of NRS 34.700 and Rugamas' petition did not
 challenge the district court's jurisdiction to proceed, prohibition is not an
 appropriate avenue for extraordinary relief.
 Rugamas' original petition better suits the counterpart to
 prohibition, the writ of mandamus. A writ of mandamus is available to
 compel the performance of an act that the law requires as a duty resulting
 from an office, trust, or station, NRS 34.160, or to control a manifest abuse
 or arbitrary or capricious exercise of discretion, see Round Hill Gen.
 Improvement Dist. v. Newman, 97 Nev. 601, 603-04, 637 P.2d 534, 536
 (1981). The writ will not issue, however, if a petitioner has a plain,
 speedy, and adequate remedy in the ordinary course of the law. NRS
 34.170. Here, Rugamas has another remedy: if he is convicted, he could
 appeal from the judgment of conviction, see NRS 177.015(3), and seek
 review of the district court's pretrial order as an intermediate order, NRS
 177.045. See generally Lisle v. State, 114 Nev. 221, 224, 954 P.2d 744, 746
 (1998). But that remedy is not adequate because a conviction would
 render any error in the grand jury proceeding harmless. See id. at 224-25,
 954 P.2d at 746-47.
 Ultimately, the decision to entertain an extraordinary writ
 petition lies within our discretion. In exercising that discretion, we must
 "consider[] whether judicial economy and sound judicial administration
 militate for or against issuing the writ." Redeker v. Eighth Judicial Dist.
 Court, 122 Nev. 164, 167, 127 P.3d 520, 522 (2006), limited on other
 grounds by Hildalgo v. Eighth Judicial Dist. Court, 124 Nev. 330, 341, 184
 P.3d 369, 377 (2008). "Where the circumstances establish urgency or
 strong necessity, or an important issue of law requires clarification and
 public policy is served by this court's exercise of its original jurisdiction,

SUPREME COURT
 OF
 NEVADA

 6
(0) 1947A
this court may exercise its discretion to consider a petition for
extraordinary relief." Schuster v. Eighth Judicial Dist. Court, 123 Nev.
187, 190, 160 P.3d 873, 875 (2007). Rugamas' petition raises an important
issue of law that needs clarification: the applicability of NRS 51.385 to
grand jury proceedings. Although we generally refrain from reviewing
pretrial challenges to the sufficiency of an indictment by way of a writ
petition, see Kussman v. Eighth Judicial Dist. Court, 96 Nev. 544, 545-46,
612 P.2d 679, 680 (1980), we have considered petitions when the case
"involves only a purely legal issue," Ostman v. Eighth Judicial Dist. Court,
107 Nev. 563, 565, 816 P.2d 458, 460 (1991). This is such a case. We
therefore elect to exercise our discretion and consider the merits of the
petition.
Hearsay and grand jury proceedings
 The Nevada Legislature has chosen to preclude a grand jury
from considering hearsay evidence. Under Nevada law, a "grand jury can
receive none but legal evidence . . . to the exclusion of hearsay or
secondary evidence." NRS 172.135(2). The threshold question thus is
whether the victim's out-of-court statements were hearsay for purposes of
NRS 172.135(2).
 We have observed that the "definition of hearsay as used in
NRS 172.135(2) is the same as that found in NRS 51.035." Gordon v.
Eighth Judicial Dist. Court, 112 Nev. 216, 223, 913 P.2d 240, 245 (1996).
NRS 51.035 defines hearsay as an out-of-court statement offered to prove
the truth of the matter asserted. Excluded from that definition, however,
are certain statements made by a person who testifies at the proceeding
and is subject to cross-examination about the statements and certain
statements made or adopted by a party-opponent or made by a party-
opponent's agent or coconspirator. NRS 51.035(2), (3). Here, the district

 7
 court determined that the victim's statements were not hearsay because
 they were inconsistent with her grand jury testimony.
 When a witness's out-of-court statements are inconsistent
 with her testimony, those statements are not hearsay if the witness
 "testifies at the. . . hearing and is subject to cross-examination concerning
 the statement." NRS 51.035(2)(a). If these requirements are met, the
 statements are admissible as substantive evidence, Miranda v. State, 101
 Nev. 562, 567, 707 P.2d 1121, 1124 (1985), overruled on other grounds as
 recognized in Bejarano v. State, 122 Nev. 1066, 1076 n.34, 146 P.3d 265,
 272 n.34 (2006), even in grand jury proceedings, because they are by
 definition not hearsay. At least one of the statutory requirements was not
 met here. Although the victim testified at the grand jury hearing, she was
 not subject to cross-examination concerning the statements. The
 statements therefore were not excluded from the definition of hearsay
 under NRS 51.035(2)(a). The district court's application of the law in this
 respect is clearly erroneous. 2
 As a secondary basis for its determination that the statements
 were not hearsay, the district court also observed that the statements
 were "impeachment evidence of the victim." This is true as a general
 proposition—a witness's inconsistent statements may call the witness's

 2Although A.C.'s statements to Y.V. and Elsa about where Rugamas
 touched her were nonverbal (she pointed toward her vaginal area), her
 nonverbal conduct was intended as an assertion that Rugamas touched
 her private area. Those nonverbal assertions constituted hearsay. See
 NRS 51.045(2); see also 30B Michael H. Graham, Federal Practice &
 Procedure § 7002, at 24-25 (interim ed. 2011) ("Nodding, pointing, and the
 sign language of the hearing impaired are as plainly assertions as are
 spoken words.").

SUPREME COURT
 OF
 NEVADA

 8
(0) 1947A
veracity into question, thus impeaching the witness's credibility.
Inconsistent statements may be used as impeachment evidence consistent
with NRS 50.075 (cited in the district court's order) and NRS 50.135. See
Miranda, 101 Nev. at 567, 707 P.2d at 1124. When used solely for the
limited purpose of impeachment, inconsistent statements are not hearsay
because they are not being offered for the truth of the matter asserted in
the statements. See NRS 51.035. But here the statements were used
primarily (if not entirely) for the truth of the matter asserted in the
statements—the statements were offered to prove that Rugamas touched
the victim's vaginal area over and under her clothing; there was no other
evidence offered to prove that conduct. Evidence that is offered for the
truth of the matter asserted is being used as substantive evidence. See
Black's Law Dictionary 640 (9th ed. 2009) (defining "substantive evidence"
as that "offered to help establish a fact in issue, as opposed to evidence
directed to impeach or to support a witness's credibility"). Inconsistent
statements may be used as substantive evidence only if they meet the
requirements of NRS 51.035(2)(a); otherwise, they may be used solely for
the limited purpose of impeachment. 3 See 30B Graham, supra, § 7011, at
123-24 (referring to parallel provisions in federal evidence rules). The
district court's application of the law in this respect is clearly erroneous.

 3 Because the statements were not used for the limited purpose of
impeachment, we need not address whether the testimony about the
statements was extrinsic evidence of the victim's prior inconsistent
statements that would have been inadmissible under NRS 50.135(2)
because Rugamas had no opportunity to cross-examine the victim about
the statements.

 9
 NRS 51.385 and grand jury proceedings
 Our conclusion that the statements were hearsay is not
 dispositive of the petition because the statutory exclusion of hearsay in
 grand jury proceedings "is subject to the hearsay exceptions" set forth in
 NRS Chapter 51. Gordon, 112 Nev. at 223, 913 P.2d at 245; see also
 Phillips v. Sheriff, 93 Nev. 309, 312, 565 P.2d 330, 332 (1977) (concluding
 that statements that fit hearsay exception for dying declarations under
 NRS 51.335 may be considered by grand jury). The district court
 determined that the statements were admissible under the hearsay
 exception set forth in NRS 51.385(1). That statute allows the admission
 "in a criminal proceeding" of statements by a child under the age of 10
 describing any act of sexual conduct or physical abuse if the child testifies
 at the proceeding or is unavailable or unable to testify and "[t]he court
 finds, in a hearing outside the presence of the jury," that there are
 sufficient guarantees that the statements are trustworthy. In making the
 trustworthiness determination, the court must consider several factors,
 including whether: "(a) The [child's] statement was spontaneous; (b) The
 child was subjected to repetitive questioning; (c) The child had a motive to
 fabricate; (d) The child used terminology unexpected of a child of similar
 age; and (e) The child was in a stable mental state." NRS 51.385(2).
 The hearsay exception set forth in NRS 51.385 is markedly
 different from other statutory hearsay exceptions. Unlike most other
 statutory hearsay exceptions, NRS 51.385 attaches specific conditions to
 the admission of evidence that necessitate a hearing and findings by the
 court before the evidence is admissible. Lytle v. State, 107 Nev. 589, 591,
 816 P.2d 1082, 1083 (1991), overruled on other grounds by Braunstein v.
 State, 118 Nev. 68, 77, 40 P.3d 413, 420 (2002). We have described the

SUPREME COURT
 OF
 NEVADA

(0) 1947A
 10
statute as providing a setting in which "reliability may be more vigorously
contested and more accurately discerned." Bockting v. State, 109 Nev.
103, 109, 847 P.2d 1364, 1368 (1993). The language in the statute and the
nature of grand jury proceedings lead us to conclude that this statutory
hearsay exception does not apply to grand jury proceedings.
 In deciding whether NRS 51.385 applies to grand jury
proceedings, we first look to the plain language of the statute. "When a
statute is facially clear, this court will give effect to the statute's plain
meaning and not go beyond the plain language to determine the
Legislature's intent." Sonia F. v. Eighth Judicial Dist. Court, 125 Nev.
495, 499, 215 P.3d 705, 707 (2009); Speer v. State, 116 Nev. 677, 679, 5
P.3d 1063, 1064 (2000) ("Generally, when the words in a statute are clear
on their face, they should be given their plain meaning unless such a
reading violates the spirit of the act." (quoting Anthony Lee R. v. State,
113 Nev. 1406, 1414, 952 P.2d 1, 6 (1997))). The plain language of the
statute contemplates admission of evidence in a criminal proceeding before
a court. We conclude that a grand jury hearing is not the same as a
criminal proceeding conducted before a court. As a general matter, the
grand jury is an arm of the court and the court that impanels the grand
jury also supervises its proceedings, see NRS 172.097, but nothing in our
statutes, the Nevada Constitution, or this court's jurisprudence suggests
that the district court's supervisory authority extends to ruling on
evidentiary matters or presiding over the grand jury proceedings in the
manner that a judge presides over a trial. See In re Report of Washoe
Cnty. Grand Jury, 95 Nev. 121, 126-27, 590 P.2d 622, 626 (1979)
(observing that "the court presides at the impanellment of the grand jury
(Art. 6, § 5, Nev. Const.; NRS 6.110-140), receives presentments and

 11
 indictments (Art. 6, § 5, Nev. Const.; NRS 172.255; NRS 172.285),
 determines when a grand jury shall be impanelled (NRS 6.110, NRS
 6.130), charges the grand jury as to its authorities and responsibilities
 (NRS 172.095),. . determines when a grand jury is to be discharged,
 recessed (NRS 6.145), or a juror excused (NRS 172.275)," and "has the
 limited power to review reports of grand juries within its jurisdiction prior
 to publication"). Instead, "[a] s a practical matter . . . it is the district
 attorney who is continually interacting with the grand jurors." Legislative
 Commission of the Legislative Counsel Bureau, Study of the Law, Rules
 and Practices Relating to the Grand Jury in Nevada, Bulletin No. 85-17, at
 8 (Nev. 1984). The district attorney "inform[s] the grand jurors of the
 specific elements of any public offense which they may consider as the
 basis of the indictment," NRS 172.095(2), and presents evidence to the
 grand jury supporting its allegations against the target, after which the
 grand jury determines whether the allegations are supported by probable
 cause. And while a target may exercise his statutory right to testify at the
 grand jury proceeding, provided that he complies with NRS 172.241(2)(b),
 he may not observe or otherwise participate in the proceeding. Similarly,
 a target's attorney may be present during the target's testimony, but
 counsel may not directly address the grand jurors or participate in the
 proceedings. See NRS 172.235; NRS 172.239. Thus, whereas NRS 51.385
 contemplates notice to the defendant, a ruling by a court as a precondition
 to admissibility, and a vigorous contest regarding the reliability of the
 child-victim's statements, the structure of the grand jury proceeding
 allows for none of these safeguards.
 The State suggests that the safeguards contemplated by NRS
 51.385 will not be obviated because the defendant can raise the

SUPREME COURT
 OF
 NEVADA

 12
(0) 1947A
evidentiary issue after the grand jury proceeding by filing a pretrial
petition for a writ of habeas corpus in the district court. See generally
NRS 34.360; NRS 34.500; NRS 34.700; NRS 34.710. We reject that
argument for three reasons. First, the plain language of the statute does
not support after-the-fact review, particularly considering how grand
juries work, as we have explained above. Second, the focus of the grand
jury is to determine whether the evidence presented establishes probable
cause. Introducing evidence that is unrelated to proving the elements of
an alleged offense but necessary to develop a record for an after-the-fact
challenge to the admissibility of that evidence that may never be pursued
is not only a distraction to the grand jury but is irrelevant to its task. And
finally, an after-the-fact determination places the burden on the defendant
both to challenge the evidence and to establish that it was improperly
received by the grand jury when NRS 51.385 normally would put the
burden on the State to give pretrial notice of its intent to offer the
statements and to establish that the statements are trustworthy. See
Felix v. State, 109 Nev. 151, 181, 849 P.2d 220, 240-41 (1993) (indicating
that district court erred by placing burden of challenging reliability of
victim's statement under NRS 51.385 on defense), superseded on other
grounds by statute as stated in Evans v. State, 117 Nev. 609, 625, 28 P.3d
498, 509-10 (2001). Although we have allowed for harmless-error review
on appeal when the trial court failed to conduct a trustworthiness hearing
under NRS 51.385, Braunstein, 118 Nev. at 77, 40 P.3d at 420, the after-
the-fact review contemplated by the State is not the same. In the
harmless-error context on appeal, the defendant had an opportunity before
and at trial to ensure that the district court conducted the trustworthiness
hearing before admitting the evidence. The same is not true in the grand

 13
 jury context. And in the harmless-error context on appeal, we have
 explained that automatic reversal does not serve a useful purpose,
 particularly where the child testifies at trial and is subject to cross-
 examination. Id. at 77-78, 40 P.3d at 420. Again, the same does not hold
 true in the grand jury context. Considering the plain language and
 requirements of NRS 51.385, as well as the structure of grand jury
 proceedings, we conclude that NRS 51.385 does not apply to evidence
 presented to a grand jury. Therefore, the testimony of Y.V., Elsa, and
 Ebrahim about the victim's out-of-court statements regarding Rugamas'
 sexual conduct was not admissible at the grand jury proceeding under
 NRS 51.385. The district court's application of the law in this respect is
 clearly erroneous.
 Having concluded that the victim's out-of-court statements
 describing Rugamas' alleged sexual conduct were hearsay and could not be
 admitted at the grand jury proceeding under the hearsay exception set
 forth in NRS 51.385, we must determine whether "there is the slightest
 sufficient legal evidence and best in degree appearing in the record' on
 which we may sustain the grand jury's probable-cause determination.
 Avery v. State, 122 Nev. 278, 285, 129 P.3d 664, 669 (2006) (quoting
 Robertson v. State, 84 Nev. 559, 561-62, 445 P.2d 352, 353 (1968)). The
 grand jury's probable-cause determination "may be based on slight, even
 'marginal' evidence." Sheriff v. Hodes, 96 Nev. 184, 186, 606 P.2d 178, 180
 (1980) (quoting Perkins v. Sheriff, 92 Nev. 180, 181, 547 P.2d 312, 312
 (1976)). In other words, the prosecution must merely show "enough
 evidence to support a reasonable inference' that the defendant committed
 the crime charged." Sheriff v. Burcham, 124 Nev. 1247, 1258, 198 P.3d
 326, 333 (2008) (quoting Hodes, 96 Nev. at 186, 606 P.2d at 180). Aside

SUPREME COURT
 OF
 NEVADA

(0) 1947A
 14
from the victim's hearsay statements, no other evidence introduced at the
grand jury hearing provided sufficient description of Rugamas' alleged
sexual conduct to satisfy the elements of the charged offenses. Left with
insufficient evidence to support the probable-cause determination, we are
compelled to conclude that the indictment is fatally deficient, and
therefore the district court manifestly abused its discretion by denying
Rugamas' habeas petition. See State v. Eighth Judicial Dist. Court
(Armstrong), 127 Nev. 267 P.3d 777, 780 (2011) (defining
manifest abuse of discretion as clearly erroneous interpretation or
application of a law or rule). Therefore, we grant Rugamas' petition and
direct the clerk of this court to issue a writ of mandamus instructing the
district court to vacate its order denying Rugamas' petition for a writ of
habeas corpus and enter an order consistent with this opinion.

 Saitta

 15